■ In the Matter of ACRES STORAGE COMPANY, INC., Petitioner, v ROBERT CHU, as Commissioner of the State Tax Commission, et al., Respondents.—Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

In 1979, Shepard Levine and Stanley Nordheimer entered into negotiations to take over the operation of a Gulf Oil Corporation automobile service station located on Second Avenue in Manhattan. At that time, the station was being operated by Adam Calderone and Oscar Calderone under the name Calga Service Center. The Calderones' lease with Gulf forbade their selling, assigning, pledging, subletting or mortgaging their rental interest in the station. As a result, two agreements signed by Levine, Nordheimer and the Calderones on December 5, 1979 provided, *inter alia,* that the Calderones would surrender their lease to Gulf if Gulf would agree to lease the station to Levine and Nordheimer and that Levine and Nordheimer would then purchase from the Calderones the tools, equipment, oil and gasoline in the station's inventory at the time of closing. A set purchase price for the foregoing was to be paid by Levine and Nordheimer.

On April 1, 1980, Gulf accepted the Calderones' surrender of their lease. At the closing on April 4, 1980, the Calderones executed a surrender of the lease to Gulf and of "the equipment and the station itself * * * to the new lessees of the station, Stanley H. Nordheimer and Shepard Levine". In addition, the Calderones executed a bill of sale to Levine and Nordheimer. Also on April 4, 1980, Levine and Nordheimer assigned all rights with regard to these transactions to petitioner, a corporation, the stock of which is owned entirely by Levine, Nordheimer and one other individual. At no time did any party notify the State Tax Commission, pursuant to Tax Law § 1141 (c), of the sale of the business assets of Calga Service Center.

When a subsequent audit was performed and it was discovered that sales and use taxes were due from Calga Service Center, petitioner was notified of its liability on such amounts due to the fact that it had failed to give the notice required by Tax Law § 1141 (c). The Tax Commission, following a hearing requested by petitioner, ultimately found that a bulk sale had taken place for purposes of Tax Law § 1141 (c) and that, with the exception of certain penalties, petitioner was liable on such amounts as were assessed against Calga Service Center. Petitioner then commenced this CPLR article 78 proceeding challenging the Tax Commission's determination.

Tax Law § 1141 (c) provides in pertinent part that:

"Whenever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of

business, the purchaser, transferee or assignee shall at least ten days before taking possession of the subject of said sale, transfer or assignment, or paying therefor, notify the tax commission by registered mail of the proposed sale * * *.

"For failure to comply with the provisions of this subdivision the purchaser, transferee or assignee * * * shall be personally liable for the payment to the state of any such taxes * * * due to the state from the seller, transferrer or assignor".

Initially, it is quite clear that the transaction between the Calderones and the Levine/Nordheimer partnership constituted a "bulk sale" within the context of the statute. For purposes of a bulk sale, "business assets" include an "item of value owned" whether tangible or intangible (*Matter of Long Is. Reliable Corp. v Tax Commn.*, 72 AD2d 826, 827, *lv denied* 49 NY2d 707; *see, Matter of Allied Stores Corp. v State Tax Commn.*, 115 AD2d 207). The written surrender of the lease, together with the business equipment and inventory on hand, certainly come within this characterization (*see, Matter of Allied Stores Corp. v State Tax Commn., supra*).

The issue thus distills to whether petitioner may properly be charged as a purchaser or transferee of these assets from the Calderones. The statute makes a purchaser at a "bulk sale" secondarily responsible for "any such taxes" due from the seller (*see, Matter of Higgins & McLaughlin v New York State Tax Commn.*, 109 AD2d 1029). The statute is not so narrowly written as to focus responsibility solely on the *immediate* purchaser who has failed to notify the Tax Commission of the bulk sale, and we decline to impose such a limitation. Since the transfer from Levine and Nordheimer to petitioner constituted a bulk sale in itself, petitioner became responsible for the taxes due from Levine and Nordheimer, including the assessments attributable to the Calderones' service station, Calga Service Center. In response to the suggestion that such a construction unjustly penalizes the subsequent purchaser, it need only be emphasized that a purchaser may easily protect its interests by timely notifying the Tax Commission of the pending sale (*see,* Tax Law § 1141 [c]).

While we further find that, in the absence of available records, the Tax Commission properly estimated the sales tax due from the Calderones (*see,* Tax Law § 1138 [a] [1]; *see also, Matter of Micheli Contr. Corp. v New York State Tax Commn.*, 109 AD2d 957, 959; *Matter of Day Surgicals v State Tax Commn.*, 97 AD2d 865, 868), the record is not altogether clear

as to either the value of the assets transferred or the amount that Levine and Nordheimer actually paid. Consequently, the matter should be remitted to the Tax Commission for an appropriate calculation of petitioner's personal liability *(see,* Tax Law § 1141 [c]).

Determination annulled, without costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith. Kane, J. P., Weiss and Mikoll, JJ., concur.

Main and Yesawich, Jr., JJ., dissent and vote to annul and grant the petition in a memorandum by Main, J. Main, J. (dissenting). We respectfully dissent. Construing the language of Tax Law § 1141 (c) to give effect to the plain meaning of the words used therein, as we must *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 76; *see also, People v Floyd J.,* 61 NY2d 895, 896; *Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345), we think it it clear that liability for taxes due from the seller in a bulk sale transaction rests secondarily only upon the *immediate* purchaser, transferee or assignee in that transaction who has failed to notify the State Tax Commission of such bulk sale *(see, Matter of Sam's Big M Supermarket,* Opns St Tax Commn [Oct. 26, 1977]; *see also, Schleidt v Stamler,* 106 AD2d 264, 265). Here, the Calderones, as sellers, dealt exclusively with Levine and Nordheimer, who negotiated on their own behalf for the purchase in question and in whose favor all documents, including the bill of sale, were executed by the Calderones. It was only after the sales transaction between the Calderones and Levine and Nordheimer had been fully completed that Levine and Nordheimer assigned their rights to petitioner. Thus, with regard to any taxes due from the Calderones' Calga Service Center, only Levine and Nordheimer, as the immediate purchasers, were potentially liable, and the Tax Commission's determination that petitioner was liable therefor was arbitrary and capricious. Accordingly, we would annul the determination and grant the petition without ever reaching the issue of whether the transaction in question was indeed a bulk sale for purposes of Tax Law § 1141 (c).